IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEVEN HORTON, #200 919, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-152-WKW |
| | ) | [WO] |
| KIM THOMAS, COMMISSIONER, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, an inmate incarcerated at the Bullock Correctional Facility in Union Springs, Alabama ("Bullock Correctional"), files this *pro se* 42 U.S.C. § 1983 action claiming that Defendants acted with deliberate indifference to his safety when they failed to protect him from an inmate assault.[1] Named as defendants are Commissioner Kim Thomas, Warden Kenneth Jones, Lieutenant Rebecca Bonner, and Correctional Officer Mitchell Patton (collectively "Defendants").[2]

Defendants filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. 13. In this filing, Defendants deny they acted in violation of Plaintiff's constitutional rights. Upon receipt of the special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for

---

[1] In accordance with the prior orders and proceedings of the court, the court denied Plaintiff's request for preliminary injunctive relief. *See* Docs. 1, 5, 16.

[2] Although Plaintiff also named the Alabama Department of Corrections and inmate Leonardo Johnson as defendants, the court dismissed Plaintiff's complaint against these defendants prior to service by order entered May 13, 2013. *See* Docs. 6 & 16.

summary judgment." Doc. 15 at 2.  Plaintiff responded to Defendants' report, *see* Docs. 21 and 22, but his response does not demonstrate that there is any genuine dispute of material fact.  As a result, the court will treat Defendants' report as a motion for summary judgment, and resolve this motion in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden.  As a result, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Celotex*, 477 U.S. at 324; *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991);

Fed. R. Civ. P. 56(e)(3).  This court will also consider "specific facts" pleaded in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Plaintiff's *pro se* status alone does not compel the court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A.    Absolute Immunity

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages.  Official-capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   As the Eleventh Circuit has held:

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity.  Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (internal citations omitted).  In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the

Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Id.* at 1429; *Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.   Lack of Service on Defendants Patton and Bonner

Plaintiff's complaint was not properly served on Defendants Patton and Bonner. The docket shows that on March 14, 2013, the court entered an order directing service of the complaint on Defendants Patton and Bonner and directing that they file an answer and written report to Plaintiff's complaint. Doc. 4.  The court's docket reflects that service was attempted on Defendants Patton and Bonner at the addresses provided by Plaintiff in his complaint, but service was not perfected because the mail was returned as undeliverable.  Consequently, the court granted Plaintiff an opportunity to furnish the clerk's office with the correct addresses for these individuals and advised him that any individuals who were not properly served would not be parties to this lawsuit absent unusual and compelling circumstances. *See* Docs. 10 & 11.

During the proceedings in this case, the court repeatedly advised Plaintiff that it was his responsibility to provide the court with Defendants' correct names and addresses for service, informed him that he must monitor the case to ensure that all named defendants had been served, and cautioned him that failing to perfect service on a defendant would cause that person not to be a party to the case. *See* Docs. 4, 10, 11.  Plaintiff did not respond to the orders directing him to provide correct service addresses for Defendants Patton and Bonner.

The Federal Rules of Civil Procedure in effect at the initiation of this lawsuit required that service on a defendant must be perfected within 120 days of the filing the complaint. Fed. R. Civ. P. 4(m).  If a defendant is not served within this time limit "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.*

The time allowed for perfecting service on Officer Patton and Lieutenant Bonner expired in July 2013.  Because service was not perfected on these individuals within the applicable timeframe, and the court finds no good cause to extend the time for service, Plaintiff's claims against Officer Patton and Lieutenant Bonner are subject to dismissal without prejudice.[3]

### C.    Deliberate Indifference

#### 1.    Failure to Protect

Correctional officials may be held liable for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and, with this knowledge, disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.  The Eleventh Circuit has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)).  A constitutional violation occurs only when a plaintiff proves "a substantial risk of serious harm, of which the official is subjectively aware . . . and the official does not 'respond[] reasonably to the risk.'" *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (quoting *Farmer*, 511 U.S. at 844).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act constitutes deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted); *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997) (holding that unless a prison official actually makes the inference that a substantial risk of

---

[3] Based on the undisputed evidence of record and in light of the findings and conclusions made in this matter, even if Defendants Patton and Bonner had been properly served, the court finds they would be entitled to summary judgment, as discussed below.

serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy).  An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991), *overruled in part on other grounds by Farmer*, 511 U.S. at 828.  An "official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. . . . However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). "The plaintiff has the burden to demonstrate that a defendant was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).

Based on the foregoing, to survive summary judgment on his failure-to-protect claim, Plaintiff must first demonstrate that an objectively substantial risk of serious harm existed and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 Fed. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1100 (11th Cir. 2014)).  If he establishes these objective elements, Plaintiff must then satisfy the subjective component.  To do so, he "must [show] that the defendant subjectively knew that [he] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. (internal

citation omitted).  Thus, to defeat summary judgment,

> a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear felt by [the] [p]laintiff."  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference."

*Johnston v. Crosby,* 135 Fed. App'x 375, 377 (11th Cir. 2005) (internal citations omitted).

Plaintiff alleges Defendants acted with deliberate indifference to his safety regarding inmate Leonardo Johnson's attack on him on May 20, 2012.  On this date, at approximately 8:25 p.m., Plaintiff claims Johnson struck him with his feet, fists, and a combination lock, rendering him unconscious.  Notwithstanding this unconscious state, Plaintiff claims to have been aware he was lying in a pool of his own blood while Officer Patton stood at the dorm window watching him for twenty-five minutes before finally coming to his aid.  Plaintiff maintains that Defendants are liable for Johnson's attack due to a lack of security inside the dorm when the incident occurred.

Defendants' evidence includes Warden Jones's affidavit, body charts, incident and duty officer reports, and other prison records.  These documents reflect that on May 20, 2012, at approximately 8:35 p.m., Officer Patton was performing routine security checks when he smelled marijuana coming from the back of both Dorms 1-1 and 1-2.  Officer Patton contacted Officer Freeman, who was assigned to the inner-fence security detail, and requested that he look through the windows in the back of the dorms to see who was using marijuana.  Officer Patton then entered the hall near the dorms and was advised by an inmate of an emergency in Dorm 1-1. Officer Patton proceeded to the dorm and saw Plaintiff laying on the floor in a puddle of blood between two beds.  The guard radioed for assistance and a stretcher, and Lieutenant Bonner and several other correctional officers entered the dorm at approximately 8:40 p.m.  Lieutenant

Bonner instructed the inmates in the dorm to get on their assigned beds and then proceeded to the area where Plaintiff was laying on the floor.  She advised Patton to stand near the location of the incident to prevent other inmates from entering the area, instructed officers to order any remaining inmates to go to another area of the dorm, and requested that the guards perform a visual check of the dorm for any inmates with blood on their clothes.  Lieutenant Bonner then accompanied Plaintiff to the infirmary.  Medical personnel examined Plaintiff and contacted the institutional physician, who arrived at the medical unit at approximately 9:00 p.m.  After assessing Plaintiff's injuries, the doctor directed that Plaintiff be transported by ambulance to the local hospital for treatment.  Plaintiff returned to Bullock Correctional around 2:00 a.m. and was placed in the health care unit for observation. Doc. 13, Exh. A, Part I at 18-22; Doc. 13, Exh. A, Part II at 14.

Lieutenant Bonner's investigation into the incident revealed that inmate Johnson assaulted Plaintiff after he could not produce the cocaine he had been holding for inmate Johnson.  Plaintiff initially denied knowing the identity of his attacker and told Lieutenant Bonner he had been hit from behind despite injuries to his facial area.  Both inmates subsequently received various disciplinary charges. Plaintiff received infractions for making false statements or charges and intentionally creating a security, safety, or health hazard.  After a hearing, the hearing officer found Plaintiff guilty of those rule violations and sanctioned him to a temporary loss of privileges and confinement to segregation. Doc. 13, Exh. A, Part I at 1–21.

On this record, there is simply no probative evidence sufficient to establish deliberate indifference of "an objectively substantial serious risk of harm" posed by inmate Johnson to Plaintiff prior to the attack. *Marsh*, 268 F.3d at 1028.  The evidentiary materials submitted by Defendants refute Plaintiff's allegations that they acted with deliberate indifference to his

safety.[4] Plaintiff's assertion that inmate Johnson has a violent prison record and, therefore, Defendants should have foreseen an attack is insufficient as it would amount, at best, to no more than a claim for negligence, which is not actionable under § 1983. *See Brown*, 894 F.2d at 1537 ("[N]negligent failure to protect an inmate from attack does not justify liability under § 1983."); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm."); *see also Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (noting that more than a mere awareness of an inmate's "propensity for being [] problematic" is required). The pleadings and documents in this matter fail to show that Plaintiff at any time identified inmate Johnson as an enemy or that any defendant or other correctional personnel knew of any prior run-ins or problems between the two inmates. The record is devoid of evidence demonstrating that Plaintiff informed any Defendant that he feared a risk of attack by inmate Johnson. The evidence also establishes that security coverage was adequate in and around the dorms at the time of the incident made the basis of Plaintiff's complaint. Doc. 13, Exh. A, Part I at 1–3; Doc. 13, Exh. A, Part II at 14.

Even if Plaintiff had satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any defendant subjectively knew of a risk of harm to him posed by inmate Johnson. Plaintiff presents no facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial harm. *Johnson*, 568 Fed. App'x at 722 (affirming dismissal for failure to state a claim

---

[4] Any broadening or expansion of his claims in his opposition to Defendants' dispositive motion, *see* Doc. 22, to include other distinct constitutional claims and/or additional claims for relief against Defendants is not properly before the court. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment.").

because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury" posed by an inmate-attacker); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (holding that increasing the number of officers in an area of the facility "may have improved security . . . [but the warden's] decision not to do so did not create a substantial risk of harm"); *Staley v. Owens*, 367 Fed. App'x 102, 108 (11th Cir. 2010) (holding that isolated inmate assaults over several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to"); *Johnston v. Crosby*, 135 Fed. App'x 375, 377 (11th Cir. 2005) (holding that where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate-attacker]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his inmate-attacker] nor of any fear [he] felt"); *Murphy v. Turpin*, 159 Fed. App'x 945, 948 (11th Cir. 2005) ("[B]ecause [plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure-to-protect] claim fails.").   Because Plaintiff has failed to show that Defendants actually knew a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well, and summary judgment is due to be granted in Defendants' favor on Plaintiff's failure-to-protect claim.

### 2.   Failure to Intervene

Plaintiff next claims that there should have been a guard in the area of the attack when it occurred so that the officer could have intervened and prevented his injuries.  This claim entitles

him to no relief because liability attaches only if a defendant was actually in a position to intervene. *See Terry v. Bailey*, 376 Fed. App'x 894, 896 (11th Cir. 2010) (*citing Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  The undisputed evidence reflects that when the physical altercation occurred between Plaintiff and inmate Johnson, Officer Patton was assigned as a rover and Lieutenant Bonner was the shift commander. Doc. 13, Exh. A, Part II at 14.  They were performing their assigned duties at the time, and neither were close enough to Plaintiff and Johnson at the time of the attack to have prevented it.  Thus, this claim fails because Plaintiff bears the burden of demonstrating that Defendants were "physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff." *Glispy v. Raymond*, No. 06-14269-CIV, 2009 WL 2762636, at *3 (S.D. Fla. Aug. 28, 2009) (citing *Ensley*, 142 F.3d at 1407–08; *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)); *see also Ledlow*, 500 Fed. App'x at 914.  Because Plaintiff fails to allege that Defendants were even in a position to intervene and to act in time to stop inmate Johnson's attack on him, summary judgment is due to be granted in Defendants' favor on Plaintiff's failure-to-intervene claim.[5]

## D.     Violation of Agency Regulations

Plaintiff alleges that Defendants violated an administrative regulation regarding the positioning of officers in the dorm, but he does not identify or describe the regulation with any particularity. *See* Doc. 1 at 3.  Infringements of agency rules, regulations or procedures do not, standing alone, amount to constitutional violations. *Davis v. Scherer*, 468 U.S. 183, 194 (1984)

---

[5] Plaintiff's failure-to-intervene claim is addressed in accordance with various panel opinions of the Eleventh Circuit that rely on *Ensley* to dispose of this type of claim.  The court is aware that the Eleventh Circuit in *Johnson* noted "[w]hile it is well settled that *Ensley* applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates." 568 Fed. App'x at 722 n.2.

(recognizing that allegations of a violation of statutory or administrative provisions do not provide the basis for a claim of violation of a constitutional right); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting that the mere fact a governmental agency's regulations or procedures may have been violated does not, alone, raise a constitutional issue); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding that a claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *see also United States v. Caceres*, 440 U.S. 741, 751-752 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley*, 316 Fed. App'x 300, 303 (4th Cir. 2009) (same); *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that, if state law grants more procedural rights than the Constitution requires, a state's failure to abide by its law is not a federal violation).  As discussed above, the court finds that Defendants did not act with deliberate indifference to Plaintiff's safety—even if the court were to assume that they did not follow some unidentified regulation.  This attempt to elevate form over substance provides Plaintiff no basis for relief, and Defendants are entitled to summary judgment on this claim.

### E.    Respondeat Superior

To the extent Plaintiff seeks to hold former Commissioner Thomas and Warden Jones accountable for the conduct of their subordinates based on their supervisory positions, he is entitled to no relief. *See* Docs. 1 & 22.  Supervisory personnel cannot be liable under 42 U.S.C. § 1983 for the action of their subordinates under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990). Instead, a plaintiff must show that the supervisor personally participated in the alleged constitutional violation or that there is a causal connection between the actions of the supervising

official and the alleged constitutional deprivation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

Defendants Thomas and Jones were not present when Plaintiff was assaulted by inmate Johnson.   Thus, these Defendants may be held liable only if their actions bear a causal relationship to the purported violation of Plaintiff's constitutional rights.   To establish the requisite causal connection and avoid entry of summary judgment in favor of these defendants, Plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation," a "custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [the supervisory officials] directed the subordinates to act unlawfully, or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal quotation marks and citations omitted).  Plaintiff has failed to meet this burden.

 Here, no evidence has been presented of obvious, flagrant, or rampant abuse of continuing duration in the face of which Defendants failed to take corrective action.   While Plaintiff generally contends inmate Johnson's attack resulted from the supervisory defendants' alleged policy of overcrowding and a failure to provide adequate security, he presents no evidence—substantially probative or otherwise—that the attack by inmate Johnson occurred pursuant to any policy enacted by these Defendants or due to any deficiency in security.  Finally, there is no probative evidence to support an inference that Defendants Thomas or Jones directed any subordinate officer to act unlawfully or knew that they would act unlawfully and failed to prevent their conduct.

Defendants Thomas and Jones were not personally involved in the alleged constitutional deprivation, and Plaintiff has not shown there is any causal connection between their actions and

the alleged constitutional deprivation. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting a complaint does not satify Fed. R. Civ. P. 8 or Fed. R. Civ. P. 12(b)(6) if it only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 557 (2007)). For these reasons, Defendants' motion for summary judgment on Plaintiff's respondeat superior claim is due to be granted.

### F.  Equal Protection

To the extent Plaintiff seeks to assert a claim of discrimination against Defendants by claiming that Bullock Correctional is a "racial prison," this claim is without merit.  To support his discrimination claim, Plaintiff states that the facility has only one white employee and white inmates are treated badly. Doc. 1 at 3.

The Equal Protection Clause guarantees that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To establish a claim under the Equal Protection Clause, a prisoner must show that (1) "he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks and citation omitted).  Additionally, in order to establish a viable equal protection claim, a litigant must show intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113–14 (11th Cir. 1987).

Here, Plaintiff has generally alleged discrimination but identifies no specific facts that allow the court to make a plausible inference that any treatment he received from Defendants was based on invidious racial discrimination. *See Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.");

14

*Marsh*, 268 F.3d at 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."). Rather, to establish a claim for an equal protection violation, Plaintiff must allege that Defendants gave differential treatment to prisoners similarly situated to him and that the reason for the adverse treatment was constitutionally impermissible. *Jones*, 279 F.3d at 946–47; *Damiano v. Fla. Parole & Prob. Comm.*, 785 F.2d 929, 932–33 (11th Cir. 1986); *Sweet v. Secr., Dept. of Corr.*, 467 F.3d 1311, 1318–1319 (11th Cir. 2006). Other than his conclusory assertion that only one white person is employed at Bullock and that white inmates are treated poorly at the institution, Plaintiff has identified no similarly situated prisoners who received more favorable treatment from the named defendants, and thus his "equal protection claim necessarily fails . . . because he has not alleged that he was treated differently from other, similarly situated inmates." *Id*. at 1319. Because Plaintiff's discrimination claim is purely conclusory in nature and unsupported by specific factual allegations, Defendants are due summary judgment claim for a violation of the Equal Protection Clause. *See Smith v. Reg. Dir. of Fla. Dep't of Corrs.*, 368 Fed. App'x 9, 12–13 (11th Cir. 2010); *Iqbal*, 556 U.S. at 678.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.     Defendant Thomas's and Defendant Jones's motion for summary judgment (Doc. 13) be GRANTED;

2.     This case against Defendants Thomas and Jones be DISMISSED with prejudice;

3.     Judgment be ENTERED in favor of Defendants Thomas and Jones;

4.     Defendants Patton and Bonner be DISMISSED without prejudice for failure to effect service on these individuals under Rule 4(m), Federal Rules of Civil Procedure; and

      5.      Costs be taxed against Plaintiff.

It is further ORDERED that, **on or before March 25, 2016**, the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the district court.  The parties are advised this Recommendation is not a final order, and therefore it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the district court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc*., 667 F.2d 33 (11th Cir. 1982).

DONE on this 11th day of March, 2016.


/s/  Gray M. Borden
UNITED STATES MAGISTRATE JUDGE